## In re MORANDE ENTERPRISES, INC., Debtor.

### Morande Enterprses, Inc., Debtor in Possession, Plaintiff,

### v.

### AmSouth Bank; Mazda American Credit, Inc.; Huntington National Bank, FSB; Charter One Auto Finance; Members Credit Union; Bank One, N.A.; Bank of America, N.A.; Ford Motor Credit Company, Inc.; Time Motors, Inc.; Suncoast Schools Federal Credit Union; Americredit, Inc. WFS Financial, Inc.: First National Bank of Naples, and The State of Florida, Department of Revenue, Defendants.

Bankruptcy No. 9:05–bk–00699–ALP. Adversary No. 9:05–ap–00088.

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Aug. 30, 2005.

---

Stephen R. Leslie, Stichter Riedel Blain Prosser, PA, Tampa, FL, Lisa M. Schiller, Miami, FL, for Debtor.

*ORDER ON PLAINTIFF'S MOTION FOR ENTRY OF MANDATORY PRELIMINARY INJUNCTION AGAINST AMSOUTH BANK DIRECTING AMSOUTH BANK TO SATISFY LIENS AND SALES TAXES*

(Doc. No. 23)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this yet to be confirmed Chapter 11 case of Morande Enterprises, Inc. (the Debtor) is a Motion filed by the Debtor. In its Motion, the Debtor is seeking a mandatory preliminary injunction against AmSouth Bank (AmSouth) directing AmSouth to satisfy liens and sale tax obligations and other miscellaneous fees owed by the Debtor (Doc. No. 23). In due course AmSouth filed its Response in opposition to the Debtor's Motion. (Doc. No. 27). In its Response, AmSouth contends that there is no basis in either law or fact for the relief sought by the Debtor. AmSouth further contends that by seeking a preliminary injunction, the Debtor attempts to strip AmSouth of its right to a full blown trial and an opportunity to conduct necessary discovery.

Although the Debtor did not seek a hearing of its Motion on an emergency basis, this Court scheduled the hearing on short notice, due to the urgency of the matter as it appeared from the Motion. The evidence presented in support of and opposition to the Motion revealed the following facts relevant to the relief sought by the Debtor.

The Debtor is a Florida corporation and is operating a new and used car dealership under a dealer agreement with Mazda of America Inc. (Mazda) and Suzuki Motor Company (Suzuki). The Debtor also sold

used vehicles and operated a full repair and body shop.

On April 30, 2002, the Debtor and AmSouth entered into a floor plan arrangement through the execution of a Loan and Security Agreement (Loan Agreement). Pursuant to the Loan Agreement, AmSouth provided a revolving line of credit with the maximum borrowing capacity of $4.5 million. To secure the advances made under the Loan Agreement, the Debtor granted a security interest in the collateral specifically identified in the Loan Agreement.

The Debtor did not attach the Loan Agreement to its Motion, but filed in support of its Motion the Affidavit of James Morande, the Debtor's President (Deb.Exh.1, Doc. No. 23) and the Affidavit of William Morande, the president of Morande Automotive Group, Inc., located in Connecticut. Mr. William Morande is the brother of James Morande (Deb.Exh.2, Doc. No. 23). The Affidavits attached to the Debtor's Motion were not challenged by AmSouth, thus, this Court will consider the affidavits for the limited purpose of the current Motion under consideration, which is a request to compel AmSouth to satisfy certain liens on traded-in automobiles and to pay the title transfer fees, registration and sales tax on each transaction due to the State of Florida.

It appears from the record that under the floor plan arrangement, the Debtor was required to pay to AmSouth the release price allocated to each particular unit when a car was sold in order to obtain the MSO and title to the vehicle. However, it appears that the price allocated to a particular unit was not always paid as required by the Loan Agreement and, as a result, as of September 8, 2004, the Debtor was "out of trust" in the amount of $456,390.33 under the line of credit provided by the Loan Agreement. In order to find a solution to this very disturbing development, the parties entered into a Forbearance Agreement on September 8, 2004 (Deb.Exh.3, Doc. No. 23).

Under the Forbearance Agreement, AmSouth agreed to forebear from exercising its rights and remedies under and pursuant to the Loan Agreement and other loan documents. In exchange, the Debtor agreed to furnish additional collateral to AmSouth to secure the "out of trust" amount, including the sum of $3,300.00 charged by AmSouth in connection with drafting, negotiating and monitoring the Forbearance Agreement. In addition, the Debtor was required to pay to AmSouth within five days from the date of the sale of any unit the amount advanced by AmSouth for the purchase of that particular unit. Furthermore, the Debtor agreed to pay AmSouth the sum of $8,100.00 each month beginning September 15, 2004, until the "out of trust" amount was satisfied in full.

While the Forbearance Agreement did not require that the Debtor open an account with AmSouth, it is without dispute that as part of the negotiations AmSouth insisted that the Debtor open an account at AmSouth and deposit all monies received from the sale of new and used vehicles in to the AmSouth account.

If there was a lien on a traded-in vehicle, it was the Debtor's obligation to satisfy the lien on the traded-in vehicle. Equally, it was the Debtor's obligation to pay to the Department of Revenue for the State of Florida, the applicable sales tax, the registration fee, and the fee for transfer of title. All of these monies were included in the gross sales price of the vehicle in question. After payment of these fees, the State of Florida would issue the title to the vehicle in the name of the purchaser and record the lien of the finance company who loaned the funds to the purchaser.

The operation of the Debtor was monitored daily by an employee of AmSouth, who was responsible to make sure that all the funds received by the Debtor were, in fact, deposited into the AmSouth account.

It appears that when a vehicle that was the collateral of AmSouth was sold, and the same vehicle was paid for partially by cash and partially by accepting a trade-in that was still under a lien, the Debtor deposited in the AmSouth bank account the total amount of proceeds received, which included the funds necessary to satisfy the lien on the traded-in vehicle, the sales tax due on the transaction, and all the fees required to be paid to the State of Florida to effectuate the title transfer. The amount that was due to AmSouth is allocable to the particular automobile sold by the Debtor. However the amount that was needed to pay the sales tax, registration fees and to pay the liens was also given to AmSouth and AmSouth had no responsibility for the liens.

It is without serious dispute that AmSouth did not pay off any liens on the vehicles traded in. Furthermore, AmSouth did not pay the State of Florida for the sales tax attributable to either the particular sale or the fees which were in connection with the registration and the title transfers concerning the vehicles involved. There are, in fact, numerous checks offered and introduced into evidence showing the deposits made by the Debtor into the bank account opened at AmSouth. However, it is difficult for this Court to determine which funds were needed by the Debtor due to the absence of an itemized breakdown showing the amount due to AmSouth, the amount needed to payoff the lien on the vehicles traded in, the amount needed to pay the sales tax, and the registration and title transfer fees.

It is true that the Debtor identified seventeen specific transactions which involved trade-ins that were encumbered with a lien. Furthermore, the Debtor identified transactions which had liens yet to be satisfied. The inability to match all deposits to the specific sale makes it difficult for this Court to quantify the precise total received by AmSouth and the amount needed to satisfy these liens. As contended by AmSouth, this Motion was set on short notice without the opportunity to conduct discovery, especially concerning the precise understanding of the parties concerning the lien payoffs and the payment of the sales taxes and the fees in connection with the transactions.

While AmSouth does not dispute that it did not pay off the liens on the traded-in vehicles, or the sales tax collected on the vehicles sold and the other fees in connection with sales, AmSouth contends first, that it was not the obligation of AmSouth to make these payments. AmSouth further contends that several transactions did not produce sufficient funds to pay the amount advanced by AmSouth to purchase the vehicle in question. Therefore, AmSouth applied all funds received by the Debtor toward the monies which were due and owing to AmSouth from the particular transaction.

These are the basic facts based on which the Debtor seeks entry of an Order granting a preliminary mandatory injunction directing AmSouth to remit to the various lien holders the amounts due to those lien holders for the vehicles listed in the Motion and to direct AmSouth to remit the amount of sales tax due to the Florida Department of Revenue from funds currently held by AmSouth.

The elements that must be established in order to obtain a preliminary injunction are (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury due to the

unavailability of an adequate legal remedy; (iii) the injury to the movant outweighs the injury to the non-movant; and (iv) the injunction would not be adverse to public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.2000), *cert. denied* 531 U.S 1005, 121 S.Ct. 510, 148 L.Ed.2d 478. It is clear based on what facts are available that this remedy, as framed, cannot be granted as a matter of law. AmSouth has no legal obligation to pay off any liens, fees, or taxes. The automobile dealer is the party obligated to satisfy liens and pay the fees and taxes. There is no legal basis in this record for shifting these obligations.

Based on the foregoing, this Court is satisfied that the Debtor's requested relief cannot be granted. However, this conclusion shall not be construed to preclude the debtor from seeking an accounting from AmSouth of all sums deposited in the AmSouth account or obtaining a detailed accounting itemizing the amount paid into the AmSouth account for each sale transaction including the amount of fees, taxes, and the amount needed to pay off the liens on traded-in items.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Morande Enterprise's Motion for Entry of Mandatory Preliminary Injunction Against AmSouth Bank Directing AmSouth Bank to Satisfy Liens and Sales Taxes be, and the same is hereby, denied.